**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **JONATHAN FARBER,** : | |
| : | |
| **Plaintiff,** : | **10 Civ. 0873 (BSJ) (GWG)** |
| : | |
| **v.** : | **ECF CASE** |
| : | |
| **GOLDMAN SACHS GROUP, INC. and** : | |
| **GOLDMAN, SACHS & CO.,** : | |
| : | |
| **Defendants.** : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

**ZUCKERMAN SPAEDER LLP**
**1540 Broadway, Suite 1604**
**New York, NY  10036-4039**

## TABLE OF CONTENTS

Introduction and Procedural Background ................................................................. 1

1.      The Arbitration. ........................................................................................... 1

2.      The Dismissal. .............................................................................................. 2

3.      The Second Bite. .......................................................................................... 3

Standard of Review ................................................................................................... 4

Argument ................................................................................................................... 6

1.      Mr. Farber Cannot Collaterally Attack the Arbitration Order
        Dismissing His Claims. ................................................................................ 6

2.      *Res Judicata* and Collateral Estoppel Preclude Mr. Farber's Claims. ........ 7

        a.      *Mr. Farber's claims have been arbitrated and decided,*
                *and the Panel's decision bars this action.* ........................................ 7

        b.      *Mr. Farber is also collaterally estopped from raising*
                *in court issues already resolved in binding arbitration.* ................. 11

3.      Mr. Farber Fails to State a Claim Under Any Legal Theory. .................... 11

        a.      *Section 10(b)of the 1934 Act and Rule 10b-5 thereunder.* ............. 11

                (i)     The allegations of fraud do not meet the particularity
                        requirements of the PSLRA. .............................................. 12

                (ii)    The allegations of fraud do not allege scienter
                        with requisite particularity. ............................................... 13

                (iii)   The allegations of fraud do not allege loss causation
                        with requisite particularity. ............................................... 15

        b.      *Section 20(a) of the 1934 Act.* ....................................................... 16

        c.      *Connecticut securities law and common law fraud.* ........................ 17

        d.      *Breach of fiduciary duty and*
                *aiding and abetting a breach of fiduciary duty.* ............................ 17

Conclusion ............................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Abercrombie v. Andrew Coll.*,
   438 F. Supp. 2d 243 (S.D.N.Y. 2006) ................................................................. 17

*Active Media Servs., Inc. v. Grant Prideco, Inc.*,
   35 A.D.3d 165, 826 N.Y.S.2d 889 (1st Dep't 2006) .................................. 10

*Am. Ins. Co. v. Messinger*,
   43 N.Y.2d 184, 401 N.Y.S.2d 36 (1977) ........................................................ 10

*Ashcroft v. Iqbal*,
   ___ U.S. ___, 129 S. Ct. 1937 (2009).............................................................. 4

*Ashland Inc. v. Oppenheimer & Co., Inc.*,
   No. 09-135-JBC, Mem. Op. & Order
   (E.D. Ky. Feb. 22, 2010)................................................... 5, 12, 13, 14

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ................................................................ 5, 6, 16

*B.L. Harbert Int'l v. Hercules Steel Co.*,
   441 F.3d 905 (11th Cir. 2006) ....................................................................... 6

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
   56 F.3d 343 (2d Cir. 1995) .............................................................................. 9

*Coffey v. Foamex, L.P.*,
   2 F.3d 157 (6th Cir. 1993) ............................................................................ 17

*Defer, LP v. Raymond James Fin., Inc.*,
   08 Civ. 3449 (LAK), 2009 U.S. Dist. LEXIS 84685
   (S.D.N.Y. Sept. 17, 2009).............................................................................. 12

*Drance v. Citigroup*,
   05 Civ. 0001 (RCC) (KNF), 2006 U.S. Dist. LEXIS 85169
   (S.D.N.Y. Aug. 6, 2006)................................................................................. 5

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627 (2005)........................................................ 15

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
   551 F. Supp. 2d 210 (S.D.N.Y. 2008) ....................................................... 14

*Fairchild Corp. v. Alcoa, Inc.*,
   510 F. Supp. 2d 280 (S.D.N.Y. 2007) ........................................................... 8, 9

*Feitshans v. Kahn*,
   06 Civ. 2125 (SAS), 2006 U.S. Dist. LEXIS 68633
   (S.D.N.Y. Sept. 21, 2006) .......................................................................... 5

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994) ........................................................................ 15

*Frank v. Dana Corp.*,
   547 F.3d 564 (6th Cir. 2008) ..................................................................... 13

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ................................................................. 16

*Gorga v. Uniroyal Chem. Corp.*,
   697 A.2d 731, 45 Conn. Supp. 24 (Conn. Super. Ct. 1996) ................................... 17

*Griffin v. Goldman, Sachs & Co.*,
   08 Civ. 2992 (LMM), 2008 U.S. Dist. LEXIS 74371
   (S.D.N.Y. Sept. 22, 2008) ...................................................................... 5, 10

*Healthcare Finance Group, Inc. v. Bank Leumi USA*,
   No. 08 Civ. 11260 (VM), 2009 U.S. Dist. LEXIS 101948
   (S.D.N.Y. Oct. 26, 2009) ............................................................. 12, 15, 17

*In re Citigroup Auction Rates Sec. Litig.*,
   No. 08 Civ. 3095 (LTS) (FM), 2009 U.S. Dist. LEXIS 83046
   (S.D.N.Y. Sept. 11, 2009) ................................................................. passim

*Interoceanica Corp. v. Sound Pilots, Inc.*,
   107 F.3d 86 (2d Cir. 1997) ......................................................................... 9

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ...................................................................... 14

*Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th Cir. 2009) ...................................... 15

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) .................................................................. 12, 15

*Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*,
   7 F.3d 1085 (2d Cir. 1993) ......................................................................... 6

*Monahan v. New York City Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 1999) ........................................................................ 7

*New York Stock Exch. Arbitration v. Shearson Lehman Hutton Inc.*,
 948 F.2d 117 (2d Cir. 1991) ................................................................... 6

*Olkey v. Hyperian 1999 Term Trust, Inc.*,
 98 F.3d 2 (2d Cir. 1996) ...................................................................... 14

*Pike v. Freeman*,
 266 F.3d 78 (2d Cir. 2001) ..................................................................... 7

*Poon v. Roomorama, LLC*,
 09 Civ. 3224 (RMB), 2009 U.S. Dist. LEXIS 104829
 (S.D.N.Y. Nov. 10, 2009) ..................................................................... 18

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
 497 F.3d 133 (2d Cir. 2007) .................................................................. 6

*Robinson v. Champaign Landmark, Inc.*,
 326 F.3d 767 (6th Cir. 2003) ................................................................. 6

*Rosa v. City Univ. of New York*,
 04 Civ. 9139 (KMW), 2007 U.S. Dist. LEXIS 24549
 (S.D.N.Y. April 2, 2007) ...................................................................... 5

*Sullivan v. Ross*,
 2009 Conn. Super. LEXIS 2714
 (Conn. Super. Ct. Oct. 5, 2009) .............................................................. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308, 127 S. Ct. 2499 (2007) ................................................... 5, 13

*Thomas v. Atl. Express Corp.*,
 07 Civ. 1978 (SCR), 2009 U.S. Dist. LEXIS 27780
 (S.D.N.Y. March 30, 2009) .................................................................... 6

*World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*,
 530 F. Supp. 2d 486 (S.D.N.Y. 2007) ...................................................... 17

*Zisholtz v. SunTrust Banks, Inc.*,
 No. 1:08-cv-1287 (TWT), 2009 U.S. Dist. LEXIS 88465
 (N.D. Ga. Sept. 24, 2009) ................................................................ 12, 14

## Statutes

Connecticut Uniform Securities Act, Conn. Gen. Stat. § 36b-29(2) .................................... 4, 9, 17

Federal Arbitration Act, 9 U.S.C. §§ 1, 9, 10 ........................................................ 1, 6, 7

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ........................................... passim

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) [Section 10(b)] .................................. passim

Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) [Section 20(a)] .......................... 4, 9, 10, 16

## **Rules**

Federal Rule of Civil Procedure 11 ....................................................................................... 7

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 4, 5

Federal Rule of Civil Procedure 9(b)............................................................................... passim

FINRA Customer Code of Arbitration Procedure, Rule 12206....................................................... 2

FINRA Customer Code of Arbitration Procedure, Rule 12504............................................. 2, 8, 9

## **Regulations**

Rule 10b-5, 17 C.F.R. § 240.10b-5.................................................................................... passim

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), the Federal Arbitration Act ("FAA"), 9 U.S.C.

§ 1, *et seq*, and the Private Securities Litigation Reform Act ("PSLRA"), the Court should dismiss

Plaintiff's Complaint.  An arbitration panel has already entered a final and binding decision on the

merits, dismissing the exact same claims Mr. Farber now alleges in the Complaint.  Mr. Farber

cannot collaterally attack that decision in this Court; rather, any legal challenge is limited to a motion

to vacate under the FAA.  Beyond that barrier, the doctrines *res judicata* and collateral estoppel also

bar all of Mr. Farber's claims.  And, in any event, Mr. Farber has not established—and cannot

establish—any of the legally required elements of the claims he asserts in the Complaint.

## Introduction and Procedural Background

### 1.      The Arbitration

Mr. Farber originally asserted the same claims that he has alleged in this Complaint in a

Financial Industry Regulatory Authority ("FINRA") arbitration against Goldman[1] and E*Trade

Securities, LLC ("E*Trade"), filed in April 2009.  (*See* Ex. 1, Statement of Claim, and Ex. 2, Compl.

¶ 71[2])  Mr. Farber sought relief in connection with a single auction rate security ("ARS") he

purchased from E*Trade.  Goldman initially requested that FINRA decline jurisdiction over Mr.

Farber's claims against it.  (Ex. 3, D. Russell's June 22, 2009 and July 6, 2009 Letters to FINRA)

Mr. Farber, however, successfully argued that FINRA "was established precisely to hear the type of

---

[1]   In the underlying arbitration, Mr. Farber sued Goldman, Sachs & Co., the securities broker-dealer that is a member of FINRA.  He did not sue The Goldman Sachs Group, Inc.  In the Complaint, Mr. Farber alleges that Goldman, Sachs & Co. is a wholly owned affiliate of The Goldman Sachs Group, Inc. (Compl. ¶ 5) and he treats them indistinguishably, as privies, without lodging any separate factual allegations against The Goldman Sachs Group, Inc.  For convenience in this Memorandum of Law, we will refer to the two Goldman entities as "Goldman," reserving arguments that each could make separately.

[2]   Filed contemporaneously with this Motion to Dismiss and Memorandum of Law in Support is the Declaration of C. Evan Stewart in Support of Defendants' Motion to Dismiss the Complaint.  The exhibits referenced in this Memorandum of Law as "Ex. __," followed by a brief description, identify exhibits to Mr. Stewart's Declaration.

claims" he was making and that his claims were subject to mandatory and binding arbitration. (Ex. 4, D. Lurie's July 2, 2009 Letter to FINRA, at p. 6)  On July 17, 2009, the FINRA Director denied the request to decline jurisdiction, and directed the parties to proceed with the arbitration. (Ex. 5, FINRA's July 17, 2009 Decision Letter)

## 2.    The Dismissal

Pursuant to the FINRA arbitration process, specifically Customer Code of Arbitration Procedure Rule 12504 (a)(6)(B), Goldman then moved to dismiss Mr. Farber's claims. (Ex. 6, Goldman's Motion to Dismiss Brief and Reply)  A motion to dismiss under Rule 12504 (a) is not jurisdictional. It may be made only after the respondent has provided an answer to the statement of claim, and it must be heard and decided by the full panel. *See* FINRA Rule 12504 (a)(2)&(4). The stringent procedures associated with a Rule 12504 motion to dismiss confirm that it is a substantive and dispositive motion on the merits.[3]  In fact, as cited in Mr. Farber's substantive opposition to the motion to dismiss, FINRA generally disfavors motions to dismiss, except where especially warranted, and refuses to grant them "routinely and repetitively." (Ex. 7, Farber's Opp. to Motion to Dismiss, at p. 13)

Following briefing, the entire Panel conducted a lengthy hearing, which was tape recorded. (Ex. 8, Transcript of Motion to Dismiss Hearing, held Dec. 18, 2009) During the hearing, the Panel Chair gave the parties an opportunity to raise objections, if any, to the proceeding. Mr. Farber did

---

[3]    In stark contrast, FINRA Rule 12206 provides for the dismissal of untimely claims in arbitration, but it specifically provides that the dismissal "does not prohibit a party from pursuing the claim in court." FINRA Rule 12206 (b) ("the moving party agrees that if the panel dismisses a claim under this rule, the non-moving party may withdraw any remaining unrelated claims without prejudice and may pursue all of the claims in court"). Thus, if FINRA intended for Rule 12504 to provide for the dismissal of claims and the relitigation of those claims in another forum, it would have made that clear in the text of Rule 12504. The absence of that language in Rule 12504 shows it is substantive, not jurisdictional, and operates to dismiss the arbitrated claims with prejudice.

not object.  After the oral argument, the unanimous panel of FINRA arbitrators ruled against Mr. Farber and granted Goldman's motion to dismiss.  Thereafter, the Panel entered its Order Dismissing Claim.  (Ex. 9, Order Dismissing Claim, dated Dec. 18, 2009 ("Order"))  On the merits, the Order specifically found:

> The arbitration panel makes the following findings of fact:
>
> (1)  The application for this relief was made in writing subsequent to the filing of the Answer to the Claim.
>
> (2)  The Motion was timely and each of the parties consented and agreed to the telephonic conference which was scheduled at the Initial Pre-Hearing Conference; and which was duly recorded.
>
> (3)  Each of the parties was given an opportunity to participate in the hearing and submit written arguments and documentation prior to the hearing date.
>
> (4)  Goldman was not connected or associated with the account at issue.
>
> (5)  Claimant did not purchase the security at issue from Goldman.
>
> (6)  Goldman did not have any knowledge or control or was involved in the Claimant's purchase of the security at issue.
>
> (7)  The security at issue was never held by Goldman in any account maintained by the Claimant at Goldman.

(Order, at p. 1)  The Order is final and binding under the relevant "Binding Arbitration" contractual provision contained in the agreement between the parties, which also states that the parties "are giving up the right to sue each other in court."  (Ex. 10, Customer Agreement Between Goldman and Mr. Farber, at p. 12, ¶ 45)

**3.     The Second Bite**

Mr. Farber did not seek reconsideration of this substantive ruling on the merits, nor has he moved to vacate the Order under the FAA.  Instead, he now seeks to re-litigate in this Court the same issues that were resolved against him on the merits in the final and binding FINRA arbitration.  This second bite at the apple fails, however, as an improper collateral attack on the arbitral result, as well as under fundamental principles of preclusion.  Moreover, even absent these procedural bars, Mr. Farber cannot any more state a claim against Goldman here on the merits than he could in the

arbitration.  His conclusory allegations remain the same:  that Goldman is somehow liable to him for his purchase from E*Trade, without Goldman's knowledge or involvement, of an ARS issued by the Massachusetts Health and Education Facilities Authority:  Children's Hospital Series I, dated May 31, 2001, due October 1, 2040, CUSIP 57585KQWI (the "HEFA ARS").  (Compl. ¶ 52)  As he did in the arbitration, Mr. Farber alleges that Goldman made misrepresentations and omissions about the liquidity of ARS generally and about its participation in the auction process.  Based on these generic allegations, Mr. Farber filed this case asserting claims for (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; (2) violation of Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a); (3) violation of Section 36b-29(2) of the Connecticut Uniform Securities Act; (4) common law fraud; (5) breach of fiduciary duty; and (6) aiding and abetting breach of fiduciary duty.

The Court should find that Mr. Farber is barred from a second pursuit of the same claims in a different forum because of the strong federal policy favoring arbitration and the doctrines of *res judicata* and collateral estoppel.  Should the Court elect to reach the merits, it should also find that Mr. Farber's claims fail as a matter of law because they do not satisfy the requisite elements and he has failed to allege the fraud-based claims with sufficient particularity.

### Standard of Review

A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A plaintiff must plead sufficient, specific facts to demonstrate a "plausible," non-speculative legal claim.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).  "Plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  Where the facts alleged are merely "consistent with" a defendant's liability, the claim fails to cross the line

between "possibility and plausibility of 'entitlement to relief.'"  *Id.*  (citation omitted).

In addition, securities fraud claims should be dismissed if they fail to meet the more stringent pleading requirements under Fed. R. Civ. P. 9(b) and the PSLRA, requiring that allegations of fraud be stated with particularity and include specific factual allegations regarding the time, place, content, and circumstances of the alleged fraud as well as specific evidence of scienter and causation.  Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 127 S. Ct. 2499 (2007); *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Ashland Inc. v. Oppenheimer & Co., Inc.*, No. 09-135-JBC, Mem. Op. & Order (E.D. Ky. Feb. 22, 2010) (holding plaintiff's allegations of fraud in connection with ARS do not meet particularity requirements of PSLRA).

Dismissal is appropriate under Rule 12(b)(6) if the facts demonstrate that a plaintiff's claims are barred by collateral estoppel.  *See Rosa v. City Univ. of New York*, 04 Civ. 9139 (KMW), 2007 U.S. Dist. LEXIS 24549, at *6 (S.D.N.Y. April 2, 2007); *Feitshans v. Kahn*, 06 Civ. 2125 (SAS), 2006 U.S. Dist. LEXIS 68633, at *2 (S.D.N.Y. Sept. 21, 2006).

In considering Goldman's motion to dismiss, the Court may consider documents other than the Complaint.  *In re Citigroup Auction Rates Sec. Litig.*, No. 08 Civ. 3095 (LTS) (FM), 2009 U.S. Dist. LEXIS 83046, at *14 (S.D.N.Y. Sept. 11, 2009).  When a motion to dismiss is premised on collateral estoppel or *res judicata*, the court is permitted to take judicial notice of and consider the complaints and the record in both actions without having to convert the motion to dismiss into a summary judgment motion.  *See Drance v. Citigroup*, 05 Civ. 0001 (RCC) (KNF), 2006 U.S. Dist. LEXIS 85169 (S.D.N.Y. Aug. 6, 2006); *see also Griffin v. Goldman, Sachs & Co.*, 08 Civ. 2992 (LMM), 2008 U.S. Dist. LEXIS 74371, at *3-4 (S.D.N.Y. Sept. 22, 2008).  A court may also consider "any written instrument attached to the complaint, statements or documents possessed by or

known to the plaintiff and upon which it relied in bringing the suit." *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *In re Citigroup Auction Rates Sec. Litig.*, 2009 U.S. Dist. LEXIS 83046, at *14.

**Argument**

1.     **Mr. Farber Cannot Collaterally Attack the Arbitration Order Dismissing His Claims.**

"A party may not collaterally attack an arbitration award." *Thomas v. Atl. Express Corp.*, 07 Civ. 1978 (SCR), 2009 U.S. Dist. LEXIS 27780, at *7-8 (S.D.N.Y. March 30, 2009) (citing *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1086 (2d Cir. 1993) ("The procedures established by 9 U.S.C. §§ 10 and 12 are normally the exclusive remedy to challenge the results of an arbitration proceeding.")); *see also Robinson v. Champaign Landmark, Inc.*, 326 F.3d 767, 771 (6th Cir. 2003) (arbitration awards under the FAA are binding unless a motion to vacate or modify has been filed in accordance with the terms of that Act). "It is well-settled that judicial review of an arbitration award is narrowly limited. The award may be vacated only if at least one of the grounds specified in 9 U.S.C. § 10 is found to exist." *New York Stock Exch. Arbitration v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991).

"The value of arbitration lies in its efficiency and cost-effectiveness as a process for resolving disputes outside the courts, and its tendency to foster a less acrimonious process. To encourage and support the use of arbitration by consenting parties, the Second Circuit, therefore, uses an extremely deferential standard of review for arbitral awards." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138-39 (2d Cir. 2007) (citing *B.L. Harbert Int'l v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006)). As emphasized by the court in *B.L. Harbert*, "[t]he laudatory goals of the FAA will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest. If we permit parties who

lose in arbitration to freely relitigate their cases in court, arbitration will do nothing to reduce congestion in the judicial system; dispute resolution will be slower instead of faster; and reaching a final decision will cost more instead of less." 441 F.3d at 907 (also finding that a "realistic threat of sanctions may discourage baseless litigation over arbitration awards" and help fulfill the FAA's pro-arbitration policy).

Mr. Farber's exclusive remedy following the dismissal of his claims in binding arbitration was to move to vacate the arbitration decision. *See* FAA, 9 U.S.C. § 10 (listing, for example, a party's right to vacate an arbitration award if there was corruption, fraud, partiality, misconduct in refusing to hear evidence, or similar misbehavior). Yet, he did not seek to vacate the arbitration award under the limited grounds available to a party under the FAA, apparently believing he lacks any of the specified grounds. Mr. Farber simply cannot choose to ignore the Panel's decision and its binding effect. The Complaint is nothing more than an improper collateral attack on a final and binding arbitral award, and the Court should dismiss it.[4]

## 2.   *Res Judicata* and Collateral Estoppel Preclude Mr. Farber's Claims.

### a.   *Mr. Farber's claims have been arbitrated and decided, and the Panel's decision bars this action.*

The doctrine of *res judicata* bars Mr. Farber's re-litigation of claims in court in light of the binding Order. *Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001). *Res judicata* bars a subsequent action where "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of*

---

[4]   Goldman reserves its rights under Fed. R. Civ. P. 11 to move for sanctions based on Mr. Farber's and his counsel's presentation to this Court of a frivolous, unwarranted, and unsupportable pleading designed for no other purpose than to harass and needlessly increase the cost of litigation.

*Corr.*, 214 F.3d 275, 284-85 (2d Cir. 1999). *Res judicata* applies in federal court litigation to bar the assertion of claims that were adjudicated or could have been raised in a previous arbitral proceeding. *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 294 (S.D.N.Y. 2007).

In his attempt to collaterally attack the decision, Mr. Farber suggests that the Order affected jurisdiction only. (Compl. ¶¶ 71-72)  The Order, however, makes clear that the dismissal was a complete adjudication on the merits. *See Sullivan v. Ross*, 2009 Conn. Super. LEXIS 2714, at *2 (Conn. Super. Ct. Oct. 5, 2009).  In fact, Goldman initially raised a jurisdictional issue when it requested that FINRA decline jurisdiction. (Ex. 3, D. Russell Letters)  But when FINRA denied that request (upon Mr. Farber's opposition), the parties proceeded with the substance of the dispute, and Goldman's Rule 12504 (a)(6)(B) motion to dismiss was clearly directed to the merits of Mr. Farber's claim.  After briefing and a full hearing on Goldman's motion, the Panel found (i) that Goldman was not connected or associated with the securities account at issue, (ii) that Mr. Farber did not purchase the security at issue from Goldman, (iii) that Goldman did not have any control or knowledge or involvement in Mr. Farber's purchase of the security at issue, and (iv) that the security at issue was never held in a Goldman account.  (Order, at p. 1)  Those are plainly merits grounds and not jurisdictional.

Indeed, even absent those express merit-based findings, the inference of a merits decision would be inescapable.  In *Sullivan*, the court found that the arbitrator's failure to cite any grounds for dismissal did not mean that the arbitrator based the decision on jurisdictional grounds. *Id.* at *2. There, the court heard the same argument Mr. Farber makes in his Complaint and found it unavailing, because there was nothing in the arbitration decision to indicate the arbitrator did not reach the merits of the claims. *Id.*  The result here is *a fortiori*.  The Order itself makes no reference to jurisdictional grounds for dismissal, and the Panel made specific findings of fact going  to the

merits. The Panel found that "[e]ach of the parties was given an opportunity to participate in the hearing and submit written arguments and documentation prior to the hearing date." (Order, at p. 1) Because the Panel reviewed both legal arguments and any evidentiary documentation that the parties provided on the Rule 12504 (a) motion, it was indisputably a determination on the merits.

*Res judicata* also applies because this litigation, like Mr. Farber's arbitration, asserts the exact same claims against Goldman. Mr. Farber's decision to name The Goldman Sachs Group, Inc. as a defendant in the litigation is a transparently feeble attempt to end run *res judicata*. The Goldman Sachs Group, Inc. is the parent corporation of the wholly-owned subsidiary Goldman, Sachs & Co., placing those two parties in privity. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). Moreover, the Complaint offers no allegation unique to The Goldman Sachs Group, Inc., and instead merely names that entity based on the same allegations relating to Goldman Sachs & Co. Goldman obviously meets the second prong for *res judicata* to apply in this matter.

Finally, Mr. Farber does not allege anything new in this litigation that he did not allege or could not have alleged in his Statement of Claim. In the Statement of Claim, Mr. Farber asserted four counts against Goldman: (1) violation of Section 10(b) of the 1934 Act and Rule 10b-5; (2) violation of Section 36b-29(2) of the Connecticut Uniform Securities Act; (3) breach of fiduciary duty; and (4) aiding and abetting breach of fiduciary duty. Without amending any of the factual allegations, Mr. Farber asserts the same claims here, but adds claims for violation of Section 20(a) of the 1934 Act and for common law fraud. Because Mr. Farber could have asserted those two claims in the arbitration, they are also barred by *res judicata*. *See Fairchild Corp.*, 510 F. Supp. 2d at 294.

A determination of whether a claim not raised in the previous action could have been raised, "depends in part on whether the same transaction or connected series of transactions is at issue, and

whether the same evidence is needed to support both claims." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997).  A court must determine whether "the underlying facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 90 (quotation omitted).  Here, Mr. Farber's common law fraud and Section 20(a) claims clearly arise from the exact same facts and circumstances as Mr. Farber's previously-asserted claims and form part of the same "convenient trial unit," requiring the same evidence and same legal arguments and seeking the same recovery.  As a result, all six of the counts asserted in Mr. Farber's Complaint are barred by the doctrine of *res judicata*.

> ### b.   *Mr. Farber is also collaterally estopped from raising in court issues already resolved in binding arbitration.*

The FINRA Panel made "findings of fact" that Goldman was not connected or associated with the E*Trade account at issue; it also determined that Goldman had no knowledge of, control over, or involvement in Mr. Farber's purchase of the security.  (Order, at p. 1)  As a result of those clear findings, Mr. Farber is collaterally estopped from re-litigating his already-rejected claims.  *See Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 187, 401 N.Y.S.2d 36, 37 (1977); *Active Media Servs., Inc. v. Grant Prideco, Inc.*, 35 A.D.3d 165, 826 N.Y.S.2d 889 (1st Dep't 2006) (collateral estoppel effect of prior arbitration precluded claimant from re-litigating its claims).

In *Griffin v. Goldman, Sachs & Co.*, 2008 U.S. Dist. LEXIS 74371 (S.D.N.Y. Sept. 22, 2008), Judge McKenna was similarly confronted with a collateral challenge to an arbitral award.  The court held that the "doctrine of collateral estoppel bars a party from re-litigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Id.* at *7.  Here, Mr. Farber has had his "fair opportunity to fully litigate"—it was on December 18, 2009, when the full Panel heard Goldman's motion to dismiss and the parties were

given "an opportunity to participate in the hearing and submit written arguments and documentation." (Order, at p. 1) In the entire transcript of that proceeding, there is no mention of jurisdictional issues, but only the substantive merits of whether Mr. Farber stated a claim that could survive a motion to dismiss. (*See* Ex. 8, Transcript of Hearing)

Mr. Farber alleges in his Complaint that Goldman violated federal and state securities laws "in connection with" its sale of ARS to Mr. Farber. (Compl. ¶¶ 76, 79, & 82) But because the Panel has already determined that Goldman was not connected or associated with Mr. Farber's account and had no involvement with his purchase of the security, Mr. Farber cannot re-litigate those counts. Mr. Farber further alleges that Goldman had a fiduciary duty to make certain disclosures to him at the time he purchased the ARS at issue. (*Id.* ¶ 88-91) Again, the Panel has already found that Goldman had no knowledge or control of Mr. Farber's purchase, and thus, there was no duty of disclosure regarding Mr. Farber's securities purchases at a competing firm. The vague allegations of common law fraud and aiding and abetting a breach of fiduciary duty were similarly heard and rejected because Goldman was not connected to and did not have knowledge of the security at issue. (*Id.* ¶¶ 84-86, 92-97) The Panel's determinations preclude any such finding, and thus Mr. Farber is collaterally estopped from asserting those claims.

**3.     Mr. Farber Fails to State a Claim Under Any Legal Theory.**

Beyond the indisputable facts that Mr. Farber already has asserted his claims, lost, and is bound by the FINRA Order, the allegations in the Complaint are wholly insufficient to state a claim and are incurably defective, as described in detail below.

**a.     *Section 10(b) of the 1934 Act and Rule 10b-5 thereunder.***

In asserting a claim under Section 10(b) and Rule 10b-5, 15 U.S.C. § 78j(b) and 17 C.F.R. § 204.10b-5, a plaintiff must plead specific facts showing that the defendant made misstatements or

omissions of material fact, with scienter, in connection with the purchase and sale of a security, upon which the plaintiff relied, and that the plaintiff's reliance was the proximate cause of the injury. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). In this case, Mr. Farber has not, and cannot, show any of these required elements; as demonstrated below, his allegations (even if considered on the merits) do not meet the particularity, scienter, and loss causation requirements.

### (i)   The allegations of fraud do not meet the particularity requirements of the PSLRA.

Taken together, Fed. R. Civ. P. 9(b) and the PSLRA impose strict pleading standards requiring plaintiffs to state with particularity the specific facts constituting the alleged violation of Section 10(b) and Rule 10b-5. PSLRA, 15 U.S.C. § 78u-4(b)(1). The plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78j(b) (1).

A series of recent decisions dealing with the auction rate securities markets have dismissed claims almost identical to Mr. Farber's for failure to allege securities fraud with sufficient particularity in connection with the purchase or holding of ARS. *See Ashland Inc. v. Oppenheimer & Co., Inc.*, No. 09-135-JBC, Mem. Op. & Order (E.D. Ky. Feb. 22, 2010); *Healthcare Finance Group, Inc. v. Bank Leumi USA*, No. 08 Civ. 11260 (VM), 2009 U.S. Dist. LEXIS 101948 (S.D.N.Y. Oct. 26, 2009); *Zisholtz v. SunTrust Banks, Inc.*, No. 1:08-cv-1287 (TWT), 2009 U.S. Dist. LEXIS 88465 (N.D. Ga. Sept. 24, 2009); *Defer, LP v. Raymond James Fin., Inc.*, 08 Civ. 3449 (LAK), 2009 U.S. Dist. LEXIS 84685 (S.D.N.Y. Sept. 17, 2009); *In re: Citigroup Auction Rate Sec. Litig.*, 2009 U.S. Dist. LEXIS 83046.

The instant case presents an even more tenuous claim than those that courts have recently dismissed.  First, unlike in the above-cited cases, Mr. Farber did not even purchase the HEFA ARS at issue from Goldman or through a Goldman account. (Compl. ¶¶ 52-53)  Second, Mr. Farber hinges his claim on his conclusory contention that Goldman told customers at some unspecified point and manner that ARS were secure, liquid securities, and cash alternatives.  (Compl. ¶ 35)  In each of the foregoing cases, however, the courts have found this allegation to be wholly insufficient to survive a motion to dismiss.  At a minimum, a plaintiff must allege the "time, place, and content of the alleged misrepresentations on which he relied." *Ashland Inc.*, No. 09-135-JBC, Mem. Op. & Order at 14 (holding plaintiff's allegations of fraud in connection with ARS do not meet particularity requirements of PSLRA); *Citigroup Auction Rates Sec. Litig.*, 2009 U.S. Dist. LEXIS 83046, at *16-17 (noting the plaintiff's failure to include specific allegations regarding which defendants performed what acts at what times and with what effect); *see also Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (noting that a plaintiff's complaint must state where and when the fraudulent statements were made).  Not only does Mr. Farber fail to allege that Goldman ever made any statements to him regarding the HEFA ARS at issue, he makes only generalized and conclusory allegations that fail to allege the particular source, time, place, or content of any alleged representations conveyed to him in connection with the HEFA ARS at issue.  These allegations do not satisfy either Rule 9(b) or the PSLRA.

### (ii)     The allegations of fraud do not allege scienter with requisite particularity.

Mr. Farber must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." PSLRA, 15 U.S.C. § 78u-4(b)(2).  A "strong inference" must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S. Ct. 2499 (2007)

(holding that court "must take into account plausible opposing inferences").  The requisite state of mind must exist at the time of the misstatement or omission, as "fraud by hindsight alone will not sustain a complaint."  *Olkey v. Hyperian 1999 Term Trust, Inc.*, 98 F.3d 2, 22 (2d Cir. 1996).

In the recent ARS cases, the courts have dismissed Section 10(b) claims due to the failure to allege scienter sufficiently.  *See, e.g.*, *Zisholtz*, 2009 U.S. Dist. LEXIS 88465; *Ashland*, No. 09-135-JBC, Mem. Op. & Order at 19-20.  In *Zisholtz*, the plaintiff alleged that SunTrust misled him by stating that the ARS were completely liquid and virtually identical to a money market account. *Zisholtz*, 2009 U.S. Dist. LEXIS 88465, at *6.  The court dismissed the complaint, holding that the allegations did not give rise to a strong inference that the defendants acted with an intent to defraud because plaintiff failed to identify the officials who allegedly made misstatements (*id.* at *14-15), failed to describe any materials containing misrepresentations (*id.* at *15-16), and failed to counter the even stronger and more plausible opposing inferences that SunTrust may have been merely negligent in disseminating information and that the total auction market collapse was unexpected (*id.* at *16-21).

Mr. Farber suggests that Goldman sold ARS to individuals to compensate for the decreasing demand from the institutional market.  (Compl. ¶ 33)  This non-particularized allegation similarly does not give rise to a strong inference of scienter because it is devoid of any details and fails counter more plausible opposing inferences.  *See Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) (finding motive to show profitability, common to all for-profit enterprises, is too generalized to support viable scienter claim); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d

210, 227 (S.D.N.Y. 2008).  Mr. Farber makes no other allegation regarding any intent by Goldman to defraud him in connection with the HEFA ARS.[5]

### (iii)   The allegations of fraud do not allege loss causation with requisite particularity.

Mr. Farber must allege economic loss and loss causation, *i.e.* causal connection between the alleged material misrepresentation and the loss.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627 (2005).  He must allege "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered."  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) ("[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases") (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994)).  On similar loss causation grounds, Judge Marrero recently dismissed ARS-related Section 10(b) claims.  *See Healthcare Finance Group, Inc.*, 2009 U.S. Dist. LEXIS 101948, at *11-14 ("[plaintiff] has not plausibly alleged that the collapse of the auction rate securities market and the market for the [ARS at issue] was caused by the revelation of the information that [defendant] had allegedly misrepresented or suppressed").  Judge Swain also recently dismissed an ARS case on loss causation grounds.  *See Citigroup Auction Rate Sec. Litig.*, 2009 U.S. Dist. LEXIS 83046, at *25-26 ("plaintiff has failed to allege that he suffered any specific economic harm as result of Defendants' conduct and, thus, he has not alleged loss causation sufficiently [as] plaintiff does not specifically allege that he tried to sell his ARS, nor does he allege that the interest rates set through Defendants' allegedly manipulative conduct were lower than they would have been absent such conduct").

---

[5]   Mr. Farber's repeated references to and reliance upon the New York Attorney General's Assurance of Discontinuance is not sufficient to meet the heightened standard for alleging scienter with particularity, either on its own or even in combination with his other meager allegations.  *See Konkol v. Diebold, Inc.*, 590 F.3d 390, 401-2 (6th Cir. 2009).

Mr. Farber has not alleged that the collapse of the ARS market was caused by the revelation of the information that Goldman allegedly misrepresented or omitted. To the contrary, Mr. Farber alleges that the collapse of the ARS market was "a growing and serious impairment" brought about "as institutional purchasers exited from the market." (Compl. ¶ 24) Furthermore, Mr. Farber's Complaint fails to allege that his losses caused the current, lower interest rates or his inability to sell the HEFA ARS that he purchased through E*Trade.

Accordingly, the Court should dismiss Mr. Farber's Section 10(b) and Rule 10b-5 claims for their woeful lack of particularity and the failure to specifically and sufficiently allege scienter and loss causation.

### b. Section 20(a) of the 1934 Act.

To establish a *prima facie* case of control person liability under Section 20(a) of the 1934 Act, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud. *ATSI Communs., Inc.*, 493 F.3d at 108. Mr. Farber's claim for control person liability fails in that it presumes—but does not allege—wrongdoing on the part of one or more of Goldman's salespersons (as yet unidentified); Mr. Farber thus does not state a claim that would create any underlying liability. *Id.*; *see also Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (success of section 20(a) claims turns on success of underlying Section 10(b) claim). Nor does he ascribe any conduct—much less culpable conduct—to The Goldman Sachs Group, Inc.

### c.    *Connecticut securities law and common law fraud.*

"Although CUSA [the Connecticut Uniform Securities Act] and the federal securities laws are not identical, in interpreting CUSA it is instructive to look to rulings of the federal courts interpreting federal securities law, particularly where the language of CUSA is similar to that of the federal law." *Gorga v. Uniroyal Chem. Corp.*, 697 A.2d 731, 735-36, 45 Conn. Supp. 24, 32-33 (Conn. Super. Ct. 1996).  Section 36b-29(2) of CUSA provides that a person who "materially assists" another by means of a false statement or omission is liable to the person buying the security for the consideration paid for the security.  Because this statute provides similar grounds for liability as the federal securities law, Mr. Farber's claims under Connecticut state securities laws cannot proceed for same reasons discussed above.

Mr. Farber's common law fraud claim is also subject to the particularity requirements of Rule 9(b), which require him to allege: (i) the time, place, and content of the alleged misrepresentation on which he relied; (ii) the fraudulent scheme; (iii) the fraudulent intent of the defendant; and (iv) the injury resulting from the fraud.  *See Healthcare Finance Group, Inc.*, 2009 U.S. Dist. LEXIS 101948, at *11; *see also Coffey v. Foamex, L.P.*, 2 F.3d 157 (6th Cir. 1993).  Because Mr. Farber has not stated with requisite particularity a Section 10(b) claim, he similarly fails to state a common law fraud claim.  *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).

### d.    *Breach of fiduciary duty and aiding and abetting a breach of fiduciary duty.*

Mr. Farber's breach of fiduciary duty claim fails because Goldman was not in a fiduciary relationship with Mr. Farber in connection with the HEFA ARS at issue or in connection with Mr. Farber's non-discretionary Goldman account.  In the absence of specific facts constituting the alleged relationship with sufficient particularity, a breach of fiduciary duty claim is subject to dismissal.  *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 504 (S.D.N.Y.

2007). A fiduciary relationship may arise from a contractual agreement or where one party holds a "superior position or superior access to confidential information so great as virtually to require [Plaintiff] to repose trust and confidence in [them]." *Poon v. Roomorama, LLC,* 09 Civ. 3224 (RMB), 2009 U.S. Dist. LEXIS 104829, at *15 (S.D.N.Y. Nov. 10, 2009) (requiring "a high degree of dominance and reliance" prior to the transaction giving rise to the alleged wrong).

Mr. Farber does not allege that he had a discretionary account with Goldman or that any agreement created a fiduciary relationship. To the extent that Mr. Farber listened to or relied upon Goldman's recommendation on a particular ARS to purchase, Mr. Farber does not and cannot allege that Goldman recommended the purchase of the HEFA ARS, the only security at issue in this case. Mr. Farber plainly admits that that purchase was recommended by an E*Trade advisor and purchased in Mr. Farber's E*Trade account. (Compl. ¶¶ 52-53) Moreover, Mr. Farber alleges no facts to suggest a special relationship with Goldman that required him to "repose trust and confidence" or to be otherwise controlled by a "high degree of dominance or reliance." Instead, Mr. Farber alleges that he was a long-time investor with millions of dollars in investments who regularly managed his own investments. (Compl. ¶¶ 41-43, 50) Because no fiduciary duty exists that could supply the basis of a breach of fiduciary duty claim, Mr. Farber's breach of fiduciary duty claim fails.

Mr. Farber's claim for aiding and abetting a breach of fiduciary duty is similarly fanciful and should be dismissed. Simply put, Mr. Farber does not plausibly allege a single fact to support any theory of collusion or any relationship whatsoever between Goldman and E*Trade, who are competing broker-dealers.

- 18 -

**Conclusion**

For the reasons set forth herein, the Court should dismiss all claims against Goldman with prejudice and require briefing, as required by the PSLRA, as to why Mr. Farber should not be required to pay Goldman's attorneys' fees and costs for having to defend this frivolous action.

Dated:  March 8, 2010

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

By:____/s/ C. Evan Stewart_____
        C. Evan Stewart (CS-8482)

1540 Broadway, Suite 1604
New York, NY 10036-4039
Telephone:  (212) 704-9600
Facsimile:   (212) 704-4256
E-mail:  estewart@zuckerman.com

Attorneys for Defendants
The Goldman Sachs Group, Inc. and
Goldman, Sachs & Co.

Of Counsel:
David G. Russell
Trishanda L. Treadwell
Parker Hudson Rainer & Dobbs LLP
1500 Marquis Two Tower
285 Peachtree Center Ave., NE
Atlanta, Georgia  30303
Telephone:  (404) 523-5300
Facsimile:   (404) 522-8409
E-mail:  drussell@phrd.com
         ttreadwell@phrd.com

- 19 -