UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN FARBER,

                Plaintiff,

    v.

GOLDMAN SACHS GROUP, INC. and
GOLDMAN, SACHS & CO.,

                Defendants.

10 Civ. 0873 (BSJ) (GWG)

ECF CASE

---

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, NY  10036-4039

# TABLE OF CONTENTS

1. The Arbitration Order Dismissing All Claims Is Final, Binding, and Preclusive. ......... 1

2. Mr. Farber's Complaint Fails to State a Claim. ............................................................... 5

   a. Mr. Farber's fraud allegations do not meet the particularity
      requirements of the PSLRA and Fed. R. Civ. P. 9(b). ..................................................... 5

      (i) Mr. Farber fails to allege with particularity any
          materially false or misleading representations
          regarding his purchase of the HEFA ARS. ........................................................ 5

      (ii) The allegations and indisputable facts show the absence of scienter. .............. 7

      (iii) Mr. Farber's Section 10(b) claim also fails to allege
           loss causation with sufficient particularity. ...................................................... 8

   b. Mr. Farber gives short shrift to his insufficiently pled
      claims concerning Section 20(a) control person liability,
      the Connecticut statute, and common law claims. ....................................................... 9

Conclusion ................................................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Alnwick v. European Micro Holdings, Inc.*,
   281 F. Supp. 2d 629 (E.D.N.Y. 2003) .................................................................................... 7

*Ashland Inc. v. Morgan Stanley & Co., Inc.*,
   No. 09-cv-5415 (RPP), 2010 U.S. Dist. LEXIS 31231 (S.D.N.Y. Mar. 30, 2010) ................ 5, 7

*Defer LP v. Raymond James Fin., Inc.*,
   654 F. Supp. 2d 204 (S.D.N.Y. 2009) .................................................................................... 7

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627 (2005) .................................................................................... 8

*Furher v. Ericsson LM Tel. Co.*,
   No. 09-0134-cv, 2009 U.S. App. LEXIS 22135 (2d Cir. Oct. 8, 2009) .................................. 6

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) .............................................................................................. 9

*In re Citigroup Auction Rate Sec. Litig.*,
   No. 08 Civ. 3095 (LTS) (FM), 2009 U.S. Dist. LEXIS 83046 (S.D.N.Y. Sept. 11, 2009) ........ 6

*In re Progress Energy, Inc.*,
   371 F. Supp. 2d 548 (S.D.N.Y. 2005) .................................................................................... 6

*Klein v. Autek Corp.*,
   147 F. Appx. 270 (3d Cir. 2005) ............................................................................................ 6

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ............................................................................................ 5, 8

*New York Stock Exch. Arbitration v. Shearson Lehman Hutton Inc.*,
   948 F. 2d 117 (2d Cir. 1991) .................................................................................................. 4

*Starr v. Georgeson Shareholder, Inc.*,
   412 F.3d 103 (2d Cir. 2005) ................................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S. Ct. 2499 (2007) .................................................................................... 8

## **Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ............................................................................... 1

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) .................................................. 5

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) [Section 10(b)] ................................. 5, 7, 8

Securities Exchange Act of 1934, 15 U.S.C. § 78(a) [Section 20(a)] ........................................... 9

## **Rules**

FINRA Customer Code of Arbitration Procedure, Rule 12100 ................................................. 2, 3

FINRA Customer Code of Arbitration Procedure, Rule 12200 ................................................. 2, 3

FINRA Customer Code of Arbitration Procedure, Rule 12504 ............................................. 2, 3, 4

FINRA Customer Code of Arbitration Procedure, Rules 12201-12206 .................................... 2, 3

New York State Code of Professional Responsibility, Rule 3.3 ..................................................... 7

Plaintiff, who is suing Goldman for a second time with respect to a single security he purchased not from Goldman but from E*Trade, has interposed an Opposition that is long on rhetoric, but devoid of substance.[1] As we demonstrated in our initial motion papers, dismissal is warranted for at least two basic reasons. First, it was plaintiff who initiated and insisted upon binding arbitration; and the arbitrators' substantive dismissal of all of his fraud and other claims is final and preclusive, subject only to a motion to vacate under the Federal Arbitration Act ("FAA"). Because Mr. Farber has no business re-litigating the same claims here, the Court need not even reach or analyze the second point. Nonetheless, it is crystal clear that Mr. Farber has not met, and cannot meet, the heightened pleading requirements for securities fraud; and, having recognized the hopelessness of his common law claims, he has effectively abandoned them.

### 1. The Arbitration Order Dismissing All Claims Is Final, Binding, and Preclusive

Given the final and binding nature of the unchallenged arbitration decision that rejected his claims against Goldman, Mr. Farber cannot avoid dismissal in this case *unless* he convinces the Court that the arbitration panel ruled that the claims were not arbitrable. This Mr. Farber has not done, and cannot do.[2]

---

[1] Besides twice suing Goldman on a security he purchased at a competing financial firm, Mr. Farber has now also improperly sued Goldman Sachs Group, against which he has lodged no factual allegations, and against which he can have no possible claim, given that it is not a broker-dealer and could not have engaged in any securities transactions with Mr. Farber. (*See* Goldman's Mem. at 1 n.1)

[2] Mr. Farber does not even address the FAA provisions and the cases cited by Goldman, all of which make clear that the "exclusive remedy to challenge the results of an arbitration proceeding" is a motion to vacate under the FAA. (*See* Goldman's Mem. at 6-7) By his own admission he has not sought any relief under the FAA, and he "is not asking this Court to vacate or overturn the FINRA Decision." (Opp. at 12) And because that unchallenged decision **adjudicated and dismissed** Mr. Farber's legal claims against Goldman, the decision is final and binding under the FAA. (Goldman's Mem. at 6)

- 1 -

*After* FINRA's Director of Arbitration had decided the issue of arbitrarily (Stewart Decl. Ex. 5), Goldman moved to dismiss Mr. Farber's claims before the arbitration panel. In response, Mr. Farber argued that the panel should not grant the dismissal because of, among other things, Goldman's alleged misrepresentations to Mr. Farber regarding the "PARS ARS products," Goldman's alleged manipulation of the PARS ARS market, and Mr. Farber's alleged reasonable reliance. (Stewart Decl. Ex. 7 at pp. 14-16) Those substantive allegations are *exactly* the *same* ones Mr. Farber is making in this case and urging in his Opposition. (*See* Opp. at 1-7, 12-25) Goldman also argued the merits: the lack of any deceptive conduct on which Mr. Farber could have relied with respect to the only security at issue. (Stewart Decl. Ex. 6 at pp. 4-6)

After full briefing and oral argument, the panel ruled: "it is unanimously determined by the members of the arbitration panel that the Motion, pursuant to FINRA Rule 12504, to dismiss all claims against Respondent, GOLDMAN is granted." (Stewart Decl. Ex. 9) That dismissal was expressly based upon the following grounds:

- "Claimant did not purchase the security at issue from Goldman"
- "Goldman did not have any knowledge or control or was involved in the Claimant's purchase of the security at issue"
- "The security at issue was never held by Goldman in any account maintained by the Claimant at Goldman"

(*Id.*) Obviously, the issues of Goldman's knowledge, control, and involvement go to the substance and the merits of Mr. Farber's arbitration claims. Those issues are not factors in an arbitrability analysis and are not mentioned in FINRA's arbitrability rules. (*See* FINRA Rule 12200; *see also* FINRA Rules 12100, 12201-12206).

Mr. Farber blatantly misrepresents the argument made by Goldman in its reply brief to the arbitration panel. To this Court, Mr. Farber argues that "Goldman urged the FINRA panel to rule on

the arbitrability of Farber's claim, *not the merits*." (Opp. at 10, emphasis original) But that is exactly the opposite of what Goldman stated in its reply brief in the arbitration. What Goldman argued to the panel was that:

> The Director's prior ruling on Goldman's Objection to FINRA Jurisdiction has no bearing on Goldman's Motion to Dismiss. Simply put, the Director ruled only on the issue of arbitrability and concluded that FINRA was the proper forum to resolve the disputes. Goldman is now proceeding in the FINRA forum, and, under the express terms of FINRA Rule 12504 (a)(6)(B), has moved to dismiss.

(Gueron Decl. Ex. E at 1) Goldman never once argued that the arbitration panel should not rule on the merits, and Goldman did not ask the panel to decide arbitrability. In its motion to dismiss the claims in the arbitration, Goldman relied upon the substantive dismissal rule, 12504, and not upon the FINRA arbitrability rules found elsewhere. (*See* FINRA Rule 12200; *see also* FINRA Rules 12100, 12201-12206) The dismissal rule, Rule 12504, does not mention arbitrability and is in no way an "arbitrability test," as Mr. Farber would have it. (*See* Opp. at 9)[3] FINRA's own description of a Rule 12504 motion shows that it is substantive:

> FINRA believes that the type of relief requested by a Rule 12504 (a) motion – the **complete dismissal** of a claim before an evidentiary hearing is completed – justifies the requirement that all arbitrators on the panel agree, **based on the evidence** presented by the party filing the motion, that the motion should be granted.

(FINRA Regulatory Notice 09-07 at 6, Gueron Decl. Ex. F(a) at 6 (emphasis added)) Consistent with this description, the Panel's Order Dismissing Claim does not mention the issue of arbitrability. (Stewart Decl. Ex. 9)

---

[3] That Rule 12504 is case dispositive on the merits is shown by reference to another FINRA Rule, 12206, which provides for the dismissal of untimely claims in arbitration but allows a claimant to pursue the untimely claim in court. The distinction between Rules 12206 and 12504 shows that the latter is substantive and not jurisdictional. This point, made by Goldman in its opening papers at page 2, n.3, is completely ignored by Mr. Farber in his Opposition.

Significantly, Mr. Farber agrees that Rule 12504 allows for a dismissal on the merits, and he specifically agrees that the *Cohen v. Morgan Keegan* dismissal under Rule 12504 *was* on the merits and *was* proper. (Opp. at 10) For a merits dismissal, however, Mr. Farber attempts to impose a requirement that the FINRA panel must "expressly include[] a merits analysis" of the elements of his securities fraud claims. (Opp. at 10) But such an analysis is not required under the FINRA Rules or court decisions. Dismissal on the merits in a FINRA arbitration does not require parsing through each element of a legal claim or defense, contrary to what Mr. Farber argues. (Opp. at 9) Typically, an arbitration decision does not even contain the panel's reasoning, but rather simply grants or denies relief. *New York Stock Exch. Arbitration v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991). In the case of a dismissal under FINRA Rule 12504, the panel must provide some sort of "a written explanation," as did the panel here. But there is no requirement in Rule 12504 that the written explanation analyze all of the nuances of a legal claim (*e.g.*, all of the requirements to prove a violation of Section 10(b) of the 1934 Act under the strictures of the Private Securities Litigation Reform Act).

The arbitration decision also precludes Mr. Farber's re-litigation of the identical claims in this Court based on the doctrines of *res judicata* and collateral estoppel. (*See* Goldman's Mem. at 7-10) Mr. Farber agrees that the same facts, the same legal claims, and the same parties are before this Court as were in the FINRA arbitration. The FINRA panel's merits decision is therefore a complete bar to the claims asserted here, and the Court should dismiss them with prejudice.[4]

---

[4] Beyond the sanctions issue facing Plaintiff and his counsel for their pleading failures under the PSLRA, Goldman continues to reserve its rights to seek sanctions against Mr. Farber and his counsel for their initiating this fully adjudicated matter in this Court. Judge Sand very recently imposed sanctions against counsel for their "never-say-die attitude" in frustrating the finality of an arbitration decision. *Prospect Capital Corp. v. Enmon*, 08 Civ 3721 (LBS), 2010 U.S. Dist. LEXIS 23477 (S.D.N.Y. Mar. 9, 2010).

### 2. Mr. Farber's Complaint Fails to State a Claim

#### a. Mr. Farber's fraud allegations do not meet the particularity requirements of the PSLRA and Fed. R. Civ. P. 9(b).

Plaintiff's Opposition does not cure the pleading deficiencies of his Section 10(b) allegations; they fail to allege with sufficient particularity any material misrepresentation, any intent to deceive, or loss causation. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). Mr. Farber generally complains about ARS purchases in his Goldman account and what happened when the ARS market unexpectedly collapsed in 2008—neither of which can support a federal securities fraud claim for the only security at issue here: the "HEFA ARS" that Mr. Farber purchased at the behest of and through Goldman's competitor, E*Trade.[5] Mr. Farber does not assert any claim for relief here on the ARS he bought at Goldman. (Opp. at 3, n.2)

##### (i) Mr. Farber fails to allege with particularity any materially false or misleading representations regarding his purchase of the HEFA ARS.

By the time Mr. Farber purchased from E*Trade the only security at issue, Goldman had already disclosed to Mr. Farber—and to the world: (i) that ARS have a risk of illiquidity in the event that an auction fails; (ii) that Goldman would periodically participate in ARS auctions to prevent them from failing; and (iii) that Goldman had no obligation to prevent future auction failures. (*See* Gueron Decl. Ex. A, Oct. 2006-Dec. 2006 Statements, at 2; Ex. D at 2-3, 5-7, & 10) As early as October 31, 2006, Goldman included these disclosures in Mr. Farber's account

---

[5] As determined recently by Judge Patterson in *Ashland Inc. v. Morgan Stanley & Co., Inc.*, No. 09-cv-5415 (RPP), 2010 U.S. Dist. LEXIS 31231 at *28-32 (S.D.N.Y. Mar. 30, 2010), allegations not in connection with the purchase or sale of the security at issue will not support a securities fraud claim. In *Ashland*, the court limited the actionable misrepresentations to those that occurred prior to the last purchase of ARS. *Id.* Here, the one and only purchase at issue is Mr. Farber's May 29, 2007 purchase of HEFA ARS through his E*Trade account. (Opp. 3, n.2) Accordingly, actionable misrepresentations are limited to those occurring prior to May 29, 2007, and this Court should not be sidetracked by Mr. Farber's other allegations. *See id.*

statements and in a publicly available memorandum regarding ARS. (*Id.*) Mr. Farber further concedes that Goldman also informed him personally that there was some risk that ARS could become illiquid. (Opp. at 3) As a result of these early and repeated disclosures, Mr. Farber cannot establish a securities fraud claim based on a purchase several months later in May of 2007. *See Furher v. Ericsson LM Tel. Co.*, No. 09-0134-cv, 2009 U.S. App. LEXIS 22135, at *4 (2d Cir. Oct. 8, 2009) (affirming Judge Patterson's dismissal of securities fraud claims where "inference of falsity is tenuous at most" considering information provided alongside alleged misstatements); *Starr v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 110 (2d Cir. 2005) (alleged omissions immaterial as a matter of law when prior disclosures contained allegedly omitted information); *In re Progress Energy, Inc.*, 371 F. Supp. 2d 548, 552 (S.D.N.Y. 2005) (finding securities fraud claims cannot survive if the relevant facts are publicly disclosed).[6]

Furthermore, no claim can be established under Section 10(b) based on nonspecific allegations of oral representations. Mr. Farber does not attempt to attribute any particular oral statements to any particular Goldman employee. *See In re Citigroup Auction Rate Sec. Litig.*, No. 08 Civ. 3095 (LTS) (FM), 2009 U.S. Dist. LEXIS 83046, at *16-17 (S.D.N.Y. Sept. 11, 2009) (dismissing ARS Section 10(b) claim and noting plaintiff's failure to include specific allegations regarding which persons performed what acts). And Mr. Farber's vague references to when the alleged statements were made (*see* Compl. at ¶ 44 ("[d]uring or around 2006")) are insufficient as a matter of law. *Klein v. Autek Corp.*, 147 F. Appx. 270, 275-76 (3d Cir. 2005) (affirming dismissal

---

[6] Mr. Farber's allegation that Goldman listed ARS in the "Cash and Cash Equivalents" category of his monthly account statements is unavailing. (Opp. at 13) He conveniently excluded from his exhibits the three pages of disclosures at the end of each monthly statement, which specifically provide that ARS, and specifically "PARS," should not be treated as cash equivalents under GAAP, Regulation T, and margin rules, and are distinct from other products in that category. (Stewart Reply Decl. Ex. A at pp. 25-27; Ex. B at pp. 16-17)

where when allegations were in "June 2000" or in "November 2000"); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 640 (E.D.N.Y. 2003) (insufficient to allege "in the Fall and Winter of 1996" or "the first month of 1997"); *see also Ashland*, 2010 U.S. Dist. LEXIS 31231 at *21 n.6 (noting, but dismissing on other grounds, that "[t]he date 'in or around August 2007' may not be sufficiently particular or sufficiently close").[7]

### (ii) The allegations and indisputable facts show the absence of scienter.

In the absence of specific, particularized allegations that give rise to a "strong inference" of scienter, Mr. Farber's securities fraud claim is legally baseless. (*See* Goldman's Mem. at 13-15) On the issue of scienter, and indeed as the crux of his fraud claims, Mr. Farber seriously misleads the Court with his repeated argument that in 2007 Goldman "unloaded its inventory" of ARS on Mr. Farber. (Opp. at 1, 7, 18-19) Not only is this unfounded speculation, it is directly contradicted by the Goldman monthly account statements attached to the Opposition. From March 2007 to February 2008, Mr. Farber **reduced** his ARS holdings at Goldman from $5,550,000 to $500,000! (Gueron Decl. Ex. A) In April 2007, the month before Mr. Farber bought the HEFA ARS from E*Trade, he **sold**, at par, $3,750,000 worth of ARS in his Goldman account! (*Id.*; *see also* Stewart Decl. Ex. B at p. 8)[8]

In this undisputed context, it is simply not plausible to suggest that Goldman intended to deceive Mr. Farber into purchasing securities through its competitor E*Trade. This is especially so

---

[7] Mr. Farber's citation to *Defer LP* as his sole support for this point is unavailing. There, the court made clear that a securities fraud claim requires a showing of the *where* and *when* of alleged misstatements. *Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 210-12 (S.D.N.Y. 2009).

[8] This type of misstatement to the Court further underscores why sanctions are warranted in this case. *See* New York State Code of Professional Responsibility, Rule 3.3.

when Mr. Farber does not allege that Goldman had knowledge of or control over that purchase or even of the E*Trade account, and the ARS markets were perfectly liquid in May 2007 when Mr. Farber bought the HEFA ARS in the secondary market without any involvement of Goldman (and remained liquid up until the entire ARS market collapsed in February 2008). Furthermore, the absence of scienter is shown from Mr. Farber's allegations (i) that Goldman made public disclosures regarding the potential for auction failures and risk of ARS illiquidity in 2006 (Gueron Decl. Exs. A & D); (ii) that Goldman itself was still purchasing ARS in 2007 (Compl. at ¶ 32); and (iii) that it was not until August 2007—*three months after the relevant security was purchased*—that the ARS market grew increasingly illiquid and subject to auction failures. (Compl. Ex. A at ¶ 10). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S. Ct. 2499 (2007).

### (iii) Mr. Farber's Section 10(b) claim also fails to allege loss causation with sufficient particularity.

Mr. Farber has not plausibly alleged loss causation; and he has not distinguished his case from the several other ARS cases that have been dismissed due to lack of loss causation. (*See* Goldman's Mem. at 15-16) Indeed, it is Mr. Farber's contention that Goldman did not "reveal the truth" about the illiquidity of ARS until weeks **after** the entire ARS market collapsed in February 2008; and thus the price of his HEFA ARS did not drop "as a result of" the alleged revelation. (*See* Opp. at 23, citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47, 125 S. Ct. 1627 (2005)). Mr. Farber correctly reads *Dura*, but that dooms him on loss causation. *See also Lentell*, 396 F.3d at 173 ("[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases").

### b.  Mr. Farber gives short shrift to his insufficiently pled claims concerning Section 20(a) control person liability, the Connecticut statute, and common law claims.

Mr. Farber fails to point to any allegations in the Complaint that cure the defects in his Section 20(a) claim. (*See* Goldman's Mem. at 16) He cannot state a claim for, and has not alleged the facts to support, underlying liability of a controlled person, and thus he cannot state a claim for control person liability under Section 20(a). *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006).

Mr. Farber concedes that his claims under the Connecticut statute and common law fraud fail if his Section 10(b) claim fails. (Opp. at 12, n.5) He completely abandons his common law claim that Goldman aided and abetted its competitor, E*Trade, in a breach of fiduciary duty. And he all but abandons his fiduciary duty claim by failing to point to any factual allegations that could plausibly show a fiduciary relationship between Goldman and Mr. Farber in connection with Mr. Farber's E*Trade account, of which Goldman had no knowledge.

## Conclusion

For the reasons set forth above, the Court should dismiss all claims against Goldman with prejudice and set a briefing schedule concerning the issue of sanctions against Mr. Farber and his counsel.

Dated: April 29, 2010

                    Respectfully submitted,

                    ZUCKERMAN SPAEDER LLP

                    By: /s/ C. Evan Stewart
                          C. Evan Stewart (CS-8482)

                    1540 Broadway, Suite 1604
                    New York, NY 10036-4039
                    Telephone: (212) 704-9600
                    Facsimile: (212) 704-4256
                    E-mail: estewart@zuckerman.com

                    Attorneys for Defendants
                    The Goldman Sachs Group, Inc. and
                    Goldman, Sachs & Co.

Of Counsel:

David G. Russell
Trishanda L. Treadwell
Parker Hudson Rainer & Dobbs LLP
1500 Marquis Two Tower
285 Peachtree Center Ave., NE
Atlanta, Georgia 30303
Telephone: (404) 523-5300
Facsimile: (404) 522-8409
E-mail: drussell@phrd.com; ttreadwell@phrd.com